United States District Court
Southern District of Texas
**ENTERED**
March 24, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| KEYLA OLARTE LIMON<br>*Individually and by next friend*<br>LAURA SAENZ,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | §<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 5:22-CV-33-1<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATIONS OF
## THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Keyla Olarte Limon, proceeding *in forma pauperis,* brings this lawsuit under the Federal Tort Claims Act (FTCA). (Dkt. No. 2). This matter was referred to the Magistrate Judge for a Report and Recommendation to address whether Plaintiff's lawsuit should survive judicial under 28 U.S.C. § 1915(e)(2)(B). (Dkt. No. 23). For the reasons below, the Undersigned **RECOMMENDS** Plaintiff's lawsuit against Defendant United States of America be **RETAINED.**

### I.    FACTUAL BACKGROUND

On or about May 20, 2017, Plaintiff was involved in a vehicle accident in Laredo, Texas, as a passenger in a car driven by her mother, Laura Saenz. (Dkt. No. 2 at 2). Emergency Medical Services ("EMS") personnel transported Plaintiff to Doctors Hospital located at 2901 Zapata Highway, Laredo, Texas. (*Id.*). At the hospital, physicians determined that Plaintiff was suffering from a brain contusion

1

and was bleeding internally. (*Id.*). Plaintiff needed to be transferred to a hospital in San Antonio, Texas, due to Doctors Hospital's lack of resources. (*Id.*). Ms. Saenz did not have legal documentation to be present in the United States. (*Id.*). Nonetheless, she decided to accompany her daughter, who was a minor at the time, in the ambulance which would transport Plaintiff to San Antonio. (*Id.*).

When the ambulance arrived at the U.S. Border Patrol checkpoint on Interstate Highway 35, north of Laredo, the ambulance driver displayed papers to U.S. Border Patrol agents which indicated that "Ms. Olarte Limon's injury, if untreated timely, had a risk of the condition worsening and/or death." (*Id.* at 3). After the initial immigration inspection of Plaintiff and her mother, Agents physically separated Plaintiff from her mother. (*Id.*). Her mother was questioned for over 30 minutes. (*Id.*). During the questioning, Plaintiff defecated herself because she was nervous. (*Id.*). Upon returning to her daughter, Ms. Saenz told agents that Plaintiff was intellectually impaired and had a brain contusion that was bleeding internally. (*Id.*). Agents then directed the ambulance to follow U.S. Border Patrol units to the hospital in San Antonio. (*Id.*).

On May 21, 2017, agents and the ambulance arrived at the hospital in San Antonio. (*Id.*). Plaintiff's father, a United States citizen, also arrived at the hospital and provided agents with his identification card, as well as Plaintiff's birth certificate. (*Id.*). He told the agents that Plaintiff acquired citizenship through him. (*Id.*). The agents, however, declined to allow him to see Plaintiff. (*Id.*). That night, Plaintiff was discharged from the San Antonio Hospital without having surgery. (*Id.* at 4). Plaintiff

2

and her mother remained in a small detention cell at the hospital, where they slept on the floor without any blankets or pillows. (*Id.*).

On May 22, 2017, Plaintiff and her mother were transported to a detention facility in Laredo, Texas. (*Id.*). There, Plaintiff was processed, fingerprinted, and remained there overnight. (*Id.*). Agents did not give Plaintiff nor her mother any hospital discharge papers nor prescriptions. (*Id.*). On May 23, 2017, Plaintiff and her mother were transported to another government facility near Mines Road in Laredo. (*Id.*). They were both released later that day. (*Id.*).

On May 17, 2019, Plaintiff filed an administrative complaint with the Office of the Chief Counsel, U.S. Immigration and Customs Enforcement, and the U.S. Department of Homeland Security. (*Id.* at 2). She received the agency's denial on November 1, 2021, (*id.*), and filed her complaint in this Court on April 30, 2022. (Dkt. No. 2).

## II. LEGAL STANDARD

When a party seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).

### A. Failure to State a Claim

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, the Court must accept the complaint's well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).

### B. Immunity and Waiver

Under the doctrine of sovereign immunity, "[t]he United States, as a sovereign, is immune from suit save as it consents to be sued." *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* "The United States has statutorily consented to suits pursuant to the terms of the Federal Tort Claims Act." *Broussard v. U.S.*, 989 F.2d 171, 174 (5th Cir. 1993).

Through the enactment of the FTCA, the federal government waived immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment. *Truman v. U.S.*, 26 F.3d 592, 594 (5th Cir. 1994). "Specifically, the FTCA allows the government to be held liable in tort for any 'negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where

the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)). However, the FTCA's waiver of immunity is subject to exceptions listed in Title 28 U.S.C. §§ 2680(a)–(n). Plaintiff bears the initial burden of proving the FTCA is applicable. *Cazales v. Lecon, Inc.*, 994 F. Supp 765, 771 (S.D. Tex. 1997) (citations omitted).

### C. The Discretionary Function Exception

The discretionary function exception withdraws the consent of the United States to be sued for the negligent or wrongful acts of its employees "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Spotts v. United States*, 613 F.3d 559, 566–67 (5th Cir. 2010). The discretionary function exception applies if: (1) the alleged employee conduct is a "matter of choice," and (2) the choice or judgment "is of the kind that the discretionary function exception was designed to shield." *Id.* at 567.

In *Ashford v. U.S.*, 511 F.3d 501 (5th Cir. 2007), the Fifth Circuit placed the burden of proof on the United States to show that the first prong of the discretionary function exception test applies. The *Ashford* court stated:

> While the FTCA takes two steps forward in allowing individuals to receive compensation for the negligent conduct of the Government, it takes one step back with the numerous statutory exceptions that limit the circumstances under which the individuals may bring suit. Perhaps the exception that is the most frequent retreat is the discretionary-function exception, . . . The Supreme Court has added some flesh to that

5

bare-boned statutory skeleton, setting up a two-part test to determine whether the discretionary function exception has been triggered. First, for the exception to apply, the challenged act must involve an element of judgment. In other words, the Government needs to establish there was "room for choice" in making the allegedly negligent decision.

*Ashford v. U.S.*, 511 F.3d at 504–05.

Accordingly, the Undersigned will not discuss the discretionary function exception at this stage in the proceedings.

### III. DISCUSSION

**A. The Federal Tort Claims Act (FTCA)**

The FTCA applies to "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[,]" if the tortfeasor is an "investigative or law enforcement officer." 28 U.S.C. 260(h); *Davila v. United States*, 713 F.3d 248, 256 (5th Cir. 2006). The FTCA defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). U.S. Border Patrol agents are "law enforcement officers" within the meaning of § 2680(h). *See Sanchez v. Rowe*, 651 F.Supp. 571, 573 (N.D. Tex. 1986) (finding that a U.S. Border Patrol agent is a "law enforcement officer within the meaning of the FTCA."). Here, Plaintiff asserts claims of false arrest and false imprisonment arising from the acts of Border Patrol agents.

Under the FTCA, a plaintiff has six months, after the federal agency sends its final denial, to file suit in district court. 28 U.S.C. 2401(b). Plaintiff received the agency's denial on November 1, 2021. Plaintiff filed her complaint on April 30, 2022.

Therefore, Plaintiff has established that the FTCA is applicable to her claim.

### B. False Arrest and False Imprisonment Under Texas Law

Courts look to the substantive law of the place where the act or omission occurred to determine whether the United States may be subject to liability. *Spotts*, 613 F.3d at 566. Plaintiff alleges she was falsely arrested and falsely imprisoned in Texas. Therefore, Texas law governs Plaintiff's claims.

Under Texas law, false arrest and false imprisonment elements are the same.[1] Both require the plaintiff establish "(1) willful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985); *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 520 (Tex. App. 1996).

### 1. Willful Detention Without Consent

In Texas, "the inquiry of whether a person has been detained for purposes of false imprisonment is the same as the inquiry for whether there has been in a 'seizure' for Fourth Amendment purposes." *De La Fuente v. U.S.*, Civil Action No. L-08-87, 2010 WL 2487942, at *5 (S.D. Tex. 2010). "In each situation, a detention can be effected by intentional use of any means to terminate a person's freedom of

---

[1] False arrest is not a separate cause of action but merely a means of committing false imprisonment. *See M.D.C.G. v. United States*, Civil Action No. 7:15-CV-552, 2016 WL 6638845 (S.D. Tex. 2016); *see also Villegas c. Griffin Indus.*, 975 S.W.2d 746, 754 (Tex. App. 1998) (finding the elements of false arrest and false imprisonment to be identical). Therefore, the Undersigned will treat these two claims as a single claim of false imprisonment for purposes of this Report and Recommendations.

7

movement." *Id.* (citing *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995); *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989); *and Brendlin v. California*, 551 U.S. 249, 254 (2007)).

A Fourth Amendment seizure may occur when an officer restrains a person's freedom of movement by (1) means of physical force or (2) show of authority. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). A seizure by show of authority, like a false imprisonment, requires actual submission to the restraint. *Brendlin*, 551 U.S. at 254; *see Black v. Kroger Co.*, 527 S.W.2d 794, 801 (Tex. App. 1975). The test for determining whether a seizure has occurred under the Fourth Amendment is whether, "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin*, 551 U.S. at 255 (quoting *Mendenhall*, 446 U.S. at 554).

"It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment." *City of Indianapolis v. Edmund*, 531 U.S. 32, 40 (2000). The vehicle stop constitutes a seizure of all occupants of the vehicle. *See Brendlin*, 551 U.S. at 257 ("A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver.") (citations omitted). By alleging Plaintiff was stopped at the U.S. Border Patrol checkpoint when she was in an ambulance, Plaintiff plausibly alleges she was seized under the Fourth Amendment and therefore detained for purposes of a false imprisonment claim.

An officer's use of language or tone indicating compliance with a request might be required is an indicator of a seizure by a show of authority. *Mendenhall,* 446 U.S. at 554. In this case, at the checkpoint, U.S. Border Patrol agents separated Plaintiff from her mother and questioned her mother for 30 minutes. After questioning Plaintiff's mother, agents directed the ambulance to follow other U.S. Border Patrol agents to the hospital. Agents in patrol units led the ambulance and other agents followed behind. At the hospital, agents told Plaintiff that she and her mother would be under observation for a maximum of two days. Agents remained outside of her hospital room until she was discharged.

On May 22, 2017, U.S. Border Patrol agents transferred Plaintiff and her mother to a detention facility in Laredo, Texas. At the facility, Plaintiff was processed, fingerprinted, and remained there overnight. The following day, Plaintiff and her mother were transferred to another detention facility in Laredo, where they were ultimately released. Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, it is plausible that no person would have felt free to divert from the agents' directions. Nor would any person have felt free to leave the agents' presence without permission.

Plaintiff alleges that at no time during her detention from May 20, 2017, to May 23, 2017, did she give U.S. Border Patrol agents consent to detain her.

Accepting these allegations as true, Plaintiff plausibly alleges she was willfully detained without consent from May 20, 2017, until May 23, 2017.

9

### 2. Without Authority of Law

"In a false imprisonment case, if the alleged detention was performed with the authority of law, then no false imprisonment occurred." *Wal-Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). Because U.S. Border Patrol agents are federal agents acting pursuant to federal law, a Texas court would consult federal law to determine whether Plaintiff was lawfully detained. *See Saldana v. United States*, Civil Action No. L-83-46, 1985 WL 5997, at *4 (S. D. Tex. 1985) (citing *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984)). Pursuant to Title 8, United States Code, Section 1357(a)(1), officers have authority, without a warrant, to interrogate any alien or person believed to be an alien as to his right to be in the United States. 8 U.S.C. § 1357(a)(1). Officers then have authority, without a warrant, to "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any law or regulation and is likely to escape before a warrant can be obtained for his arrest, . . . ." *Id.* § 1357(a)(2). U.S. Border Patrol agents are officers within the meaning of Sections 1357(a)(1) and (a)(2). *See United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) (interpreting § 1357 within the context of U.S. Border Patrol agents). Section 1357 must be read in light of the constitutional requirements of the Fourth Amendment. *See id.* at 881 (finding that Section 1357(a)(3) is subject to the reasonableness requirement mandated by the Fourth Amendment); *see also Mendoza v. I.N.S.*, 559 F.Supp. 842, 847 (W.D. Tex. May 17, 1982) *citing Almeida-Sanchez v. U.S.*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596

(1973) ("[Sections 1357(a)(1) and (2)], however, must be construed to be consistent with the requirements of the Fourth Amendment").

The Fourth Amendment allows a person to be stopped at a Border Patrol checkpoint without any suspicion. *United States v. Martinez-Fuerte*, 428 U.S. 540, 562 (1976). "The scope of an immigration checkpoint stop is limited to the justifying, programmatic purpose of the stop: determining the citizenship status of persons passing through the checkpoint." *United States v. Machuca-Barrera*, 261 F.3d 425, 433 (5th Cir. 2001). "[T]he permissible duration of the immigration stop is the 'time reasonably necessary to determine the citizenship status of the persons stopped.'" *United States v. Portillo-Aguirre*, 311 F.3d 647, 652 (5th Cir. 2002) (quoting *Machuca-Barrera*, 261 F.3d at 433). "[A]ny further detention beyond a brief question or two or a request for documents evidencing a right to be in the United States must be based on consent or probable cause." *Id.* Whether probable cause exists is determined based on the totality of facts and circumstances within the officer's personal knowledge at the time of arrest. *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).

Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, U.S. Border Patrol agents plausibly lacked probable cause to detain Plaintiff based on any beliefs regarding her own immigration status once agents had received her birth certificate. Even if agents intended to detain Plaintiff, who was a minor at the time, alongside her mother simply because they did not want to release a minor on her own, it is conceivable that Plaintiff could have been released to her father once he arrived at the hospital in San Antonio.

It is unlikely that agents would have formed probable cause to detain Plaintiff on grounds that she was involved in another offense such as the transportation of an undocumented alien under Title 8, United States Code, Section 1324. This offense requires that a person act knowingly or with reckless disregard. Given Plaintiff's medical condition at the time of her immigration inspection on May 20, 2017, and agents' follow up actions of escorting Plaintiff to the hospital in San Antonio, it is unlikely that agents would have formed probable cause that Plaintiff was physically capable of committing an offense under Section 1324.

Therefore, the Undersigned recommends the District Court find that Plaintiff plausibly established she was detained without authority of law.

## IV.  RECOMMENDATIONS

The Undersigned **RECOMMENDS** Plaintiff's lawsuit against Defendant United States of America be **RETAINED.**

SIGNED ON March 24, 2023, at Laredo, Texas

CHRISTOPHER DOS SANTOS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant

to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).